GILL v. BALIS *et al.*, *Appellants*.

1. **Insurance**: SUIT BY RECEIVER OF AN INSURANCE COMPANY IN HIS OWN NAME. Section 32 of the insurance law, (Wag. Stat., p. 774,) confers upon the courts, in proceedings instituted against an insurance company under that law by the Superintendent of the Insurance Department, power to appoint agents or receivers to take possession of the property of the company and to make such orders and decrees as may be needful to suspend, restrain or prohibit the further continuance of the business of the company, or for the dissolution of the company and the winding up of its affairs. *Held*, that the general power of making all needful orders for winding up the affairs of the company thus conferred included the power to make an order authorizing and directing a receiver appointed in such a proceeding to bring suit in his own name for the assets of the company; and that a suit so brought under such an order could be maintained.

2. ——— : FRAUDULENT ATTEMPT OF DIRECTORS TO RELEASE STOCKHOLDERS. The board of directors of an insurance company knowing that their company had just been reported by an official examiner to the Superintendent of the Insurance Department as being in an unsound condition, and that that officer would probably institute legal proceedings to have the company wound up, passed a resolution to the effect that all stockholders who would pay five per cent on their stock, (on which ninety per cent was unpaid,) and would surrender their stock certificates to the company, should have the privilege of retiring from the company, and withdrawing their stock notes. If all the stockholders had acted on this resolution, the company would have had the means of paying about one-half its ascertained liabilities, and no more, with no provision for its outstanding policies. *Held*, that the resolution was a fraud in law, if not in fact, upon the creditors of the company, and was no protection, as against them, to those stockholders who had availed themselves of its provisions.

3. **Corporation**: DIRECTORS CANNOT REDUCE CAPITAL STOCK. The board of directors of a corporation have no power to diminish the capital stock of the corporation unless authorized by a vote of the stockholders.

4. ——— : WITHDRAWAL OF STOCK. An attempt on the part of a portion of the stockholders of a corporation to withdraw from the corporation before all its debts are paid, by cancelling their stock, will be none the less void because enough remain to meet the claims of creditors.

*Appeal from Jackson Circuit Court.*—HON. S. L. SAWYER, Judge.

AFFIRMED.

*John B. Hale, H. M. Pollard* and *F. M. Black* for appellants.

1. The board had power to pass and carry out the resolution of February 17th, 1871. *Dorr v. Stockdale,* 19 Iowa 269; *Hyde v. Lynde,* 4 N. Y. (4 Comst.) 387; *Slee v. Bloom,* 19 Johns. 456 : s. c., 5 Johns. Ch. 366; *Cooper v. Frederick,* 9 Ala. 741; *Taylor v. Miami Export. Co.,* 6 Ohio 177, 218; *City Bank v. Bruce,* 17 N. Y. 507; *Farmers, etc., Bank v. Transfer Co.,* 18 Vt. 131; *Miller v. Great Republic Ins. Co.,* 50 Mo. 55.

2. The surrender made by the stockholders being binding on the company, is binding on the receiver. *Hyde v. Lynde,* 4 N. Y. 387, 392.

3. Suit by the receiver is not authorized by law. High on Receivers, § 288; *Atty. Gen. v. Utica Ins. Co.,* 2 John. Ch. 371. Receivers appointed by statutory authority possess such powers as are given by the statute, and none other. *Hannah v. Moberly Bank,* 67 Mo. 678; *Runyon v. Farmers, etc., Bank,* 4 N. J. Eq. 480. Our statute confers no such authority. 1 Wag. Stat., 774, § 32; *Curtis v. Leavitt,* 15 N. Y. 42; 2 Wag. Stat., 1048, §§ 52, 53; 1 Ib., 187, §§ 30, 31, 32; Ib., 606, §§ 20, 21. The general scope and object of the insurance law is to ascertain whether or not the company is on a sound basis, and if not to stop it from doing business, and to protect the property in the meanwhile. The rights of creditors and others are left to the general course of the law. In this case no order of dissolution has ever been made, and no final hearing had, and if such an order were made, the directors would become trustees to sue and be sued, and to do all needful acts

to wind up the affairs of the company.   1 Wag. Stat., 293, § 21.

*J. Brumback* and *T. A. Gill* for respondent.

1.  It is very clear that under section 32 the court may enjoin the further continuance of the business of unsound companies, appoint a receiver, dissolve the corporation, and wind up their affairs.   The section, it is true, in terms provides, that the court " may appoint a receiver to take possession of the property of said company," but that special language refers to what may be done, before the court on final hearing of the petition decides to wind up the affairs of the company.   Winding up the affairs of a company is very comprehensive language, and certainly includes the conversion into money by sale of the property in possession of a company, and the collection of what may be owing to it, and with funds thus obtained discharging its liabilities on policies or otherwise, and ascertaining and determining such liabilities for that purpose.   To this end it is certainly proper for the court to use a receiver, as was done by the circuit court in this instance.

2.   The formal surrender by defendants of their certificates of stock and transfer of their shares, as provided by the resolutions of February 17th, 1871, were acts utterly void, and ineffective in law to release them from liability as stockholders.   *Bedford R. R. Co. v. Bowser*, 48 Pa. St. 29 ; *Mann v. Pentz*, 2 Sandf. Ch. 257, 270; *Osgood v. Laytin*, 42 N. Y. (3 Keyes) 521 ; Story Eq. Plead., § 69 ; *State Savings Association v. Kellogg*, 52 Mo. 591 ; *Com. Bank v. Chambers*, 8 Smedes & M. 48 ; *Porter v. Williams*, 9 N. Y. (5 Seld.) 149.

3.   This stock subscription was a trust fund, held by the company, first for the payment of its debts, and the stockholders have no rights till these creditors are satisfied. Angell & Ames on Corp., §§ 599 to 604 ; *Wood v. Dummer*, 3 Mason 308, 311, 312 ; *Nathan v. Whitlock*, 9 Paige 152 ;

*Upton v. Tribilcock*, 91 U. S. 45 ; *Sawyer v. Hoag*, 17 Wall. 610.

NORTON, J.—The Superintendent of the Insurance Department, on the 24th day of March, 1871, instituted a suit in the circuit court of Jackson county against the Kansas City Fire & Marine Insurance Company, the purpose of which was, among others, to enjoin it from carrying on its business as an insurance company, and to wind up its affairs. On the 9th day of August, 1871, a decree was rendered in said cause enjoining and restraining said company from conducting business, and with a view to winding up its affairs. L. C. Slavens was appointed receiver, and was directed to take possession of all the assets and property of every nature and description, including moneys, and all books, records and papers belonging to said company. On the 10th day of May, 1872, said Slavens tendered his resignation as receiver to said court, which was accepted, and on said day said court, by its order and decree, and in furtherance of its purpose of winding up the affairs of said company, appointed Turner A. Gill, the plaintiff in the present suit, receiver, and devolved upon him the performance of all duties required of the former receiver, Slavens.

By the further order of said court made in June, 1873, the said receiver, Gill, was required and directed to join in an action prosecuted in his own name all parties liable in any way for and on account of subscriptions to the capital stock of said insurance company, now unpaid, and for balances unpaid on stock or subscriptions therefor. In obedience to this order, plaintiff Gill, as such receiver, instituted the present suit in his own name against all the defendants as stockholders of said company for the purpose of recovering forty per cent of the par value of each share of the capital stock of said company. The trial of the cause resulted in a judgment for the plaintiff, from which the defendants prosecute their appeal to this court. The principal

grounds of error relied upon by defendants as touching
the merits of the case are, first, that the plaintiff, as receiver,
could not institute or maintain a suit in his own name, and
second, that if he could do so, they were in no way liable
as stockholders, each of the defendants claiming exemp-
tion from liability as such by reason of their having sur-
rendered their stock to said company, whereby they insist.
they ceased to become stockholders thereof.

It will be observed that the receiver in this case derives
his power and right to sue from an order of the Jackson
1. INSURANCE: suit county circuit court; and the question pre-
by receiver of an
insurance compa- sented, whether or not he can maintain this
ny in his own
name.           suit in his own name, is dependent upon a
construction of section 32, page 772, Wagner's Statutes.
The above section is found in a law entitled "Insurance,"
which, among other things, provides for the creation of an
Insurance Department, which shall be charged with the
execution of all laws in relation to insurance and insurance
companies in this State, and also provides for the appoint-
ment of a Superintendent of the Insurance Department as
the chief officer thereof. Section 32 of this law makes it
the duty of the Superintendent, when, upon an examina-
tion of the affairs of any insurance company, it shall appear
that such company is insolvent, or that its condition is such
as to render its further proceedings hazardous to the
public, to file, in the office of the circuit court of the
county in which it has its principal office or place of busi-
ness, a petition setting forth the condition of the company,
and praying for a writ of injunction to restrain said com-
pany, in whole or in part, from further proceeding in its.
business. At any time after such petition is filed the court.
in which it is pending is charged with the duty of appoint-
ing agents or receivers to take possession of the property
of said company, and upon final hearing, with the further
duty of making such orders and decrees as may be needful
to suspend, restrain and prohibit the further continuance
. of the business of said company, or any part thereof, or for

the dissolution of the company and the winding up of its affairs.

By virtue of this section, when the Superintendent of the Insurance Department files his petition, the court or judge may, upon inspection of the petition, before answer filed or any hearing had upon the merits, appoint a receiver to take charge of the property of the delinquent company; and if no other power than this had been conferred upon the court, the position taken by appellants that the receiver could not prosecute a suit in his own name, for the recovery of a debt due the company, would be maintainable. But the section goes further and authorizes the court on a final hearing to make such orders and decrees as may be needful " in winding up the affairs of such company." It is difficult to conceive how the court could perform the duty enjoined upon it of winding up the affairs of the company, if it could not employ agencies to enforce the collection of the debts owing to said company. The settlement or winding up the affairs of a delinquent corporation can only be accomplished by the application of its assets to the payment of its debts, and the distribution to the stockholders of what may remain after the debts are paid. Ordinarily, before the assets, when they consist in property and debts due the company, can be thus applied, it is necessary to convert the property into cash and to collect the debts, and until this is done, its affairs cannot be settled, and the duty enjoined upon the court of winding up its affairs would remain unperformed.

The duty of settling up the affairs of the company being thus devolved upon the court, no reason is perceived why it might not (without any statutory provision) resort to such methods as would enable it to perform the duty. But we think that section 32, *supra*, sets this question at rest by expressly authorizing the court to make all orders and decrees needful for winding up its affairs. The statute invests the court in which the proceeding is pending, with the power to determine the necessity of the orders and de-

crees it may make in respect to the end to be attained ; and if, in order to the attainment of the end, it appears to the court that a necessity exists for the collection of the debts due the company, and if acting upon that necessity, it does order and direct a receiver, its own officer, to institute suits in his own name for that purpose, we would not be authorized to review his action in that respect, unless the power thus exercised was a gross and palpable abuse of it and in no aspect of the case calculated to accomplish the winding up of the affairs of the company.  The question is not as to the power of the receiver to sue in his own name, but as to the power of the court charged with the duty of winding up the affairs of the corporation to make such orders as in its judgment are necessary to enable it to perform the duty enjoined.  This question the statute settles by expressly giving such power to the court, and to deny that it possessed it would be to nullify the statute.  The making of an order in terms dissolving the corporation is not a condition precedent to the exercise of the power given to wind up its affairs, since the defendant corporation in this suit instituted by the Superintendent of the Insurance Department for the purpose of dissolving it and winding up its affairs, withdrew its answer to the petition and suffered judgment to go by default.

Defendants base their claim of exemption from liability as stockholders on a certain resolution passed by the board of directors on the 17th day of February, 1871, to the effect that all stockholders who would pay five per cent on their respective shares of stock and surrender their stock certificates to the company, should have the privilege of retiring from the company, and withdrawing their stock notes.  Defendants claim that they complied strictly with the above resolution, and by reason of such compliance they are released from liability as stockholders.  It is, on the other hand, insisted that the passage of said resolution by the directors

2. ———: fraudulent attempt of directors to release stockholders.

was *ultra vires*, and for that reason void, and that it was also fraudulent as to creditors and stockholders.

A solution of this question can only be reached by reference to the facts found by the referee to whom the case was referred. It appears from his report that the capital stock of the company was $400,000, of which $255,250 had been subscribed, and on which only ten per cent had been paid, and the remainder secured by the stock notes of the respective shareholders; that after the resolution of February 17th, 1871, the stockholders, among whom the defendants are embraced, surrendered to the company certificates of stock amounting to $167,200, after paying five per cent thereon, and received therefor from the company their stock notes, given to secure the payment of stock respectively subscribed for by them to the amount of $150,400. The only stock remaining, after this surrender, amounted to $88,000, on which there was owing not to exceed $81,000, only $41,760 of which the referee finds was collectable. At the time the resolution was adopted, according to the report of the finance committee of said company, the company had lost $48,250, and the liabilities of the company other than the capital stock amounted to $32,121.27, including a reinsurance fund estimated at $10,000, which estimate the referee finds to be $5,621.37 less than it ought to have been. In the report of this committee no account was taken of $350,000 of outstanding policies and liabilities. The referee further finds that on the 7th day of February, 1871, the Superintendent of the Insurance Department entered, through an expert, upon an examination of the condition of said company, who, on the 14th day of February, three days before the passage of the resolution under which defendants claim exemption, reported to the Superintendent that the condition of the company was such as to render its further proceeding in business hazardous to the public and those holding its policies. The referee finds further, that at the time of the passage and adoption of said resolution the affairs of said company

were in a bad, unsound, unsafe condition, and in such a state that the stockholders of said company were liable to lose heavily; and said directors also, then, each and all, well knew of the before mentioned examination of the affairs of the company, caused to be made by the Superintendent of the Insurance Department, and that said Superintendent would probably file a petition praying for an injunction to restrain said company in whole from further proceeding with its business, to wind up its affairs; and they also knew that said company had failed to make the reports to the Insurance Department required by law, and to comply with the law governing it and its business in many respects; that said resolutions were never ratified or adopted by the stockholders of said company. The referee further finds that at the time of the passage of the resolution, excluding the stock notes held by the company, the remaining assets amounted only to $2,000.

In the light of the above facts we cannot see how the action of the board of directors in the passage of the resolution of February, 1871, can be upheld. Casting out of view liabilities which might come against the company in consequence of the $350,000 of outstanding policies, and taking the estimate of its liabilities to be $32,121.27, as reported by the finance committee, if all the stockholders had complied with the terms of the resolution by paying five per cent of their stock notes and surrendering their stock, and receiving in return therefor their stock notes, constituting all the assets of the company except $2,000 and the five per cent thus paid in on $255,250, amounting to $12,762.50, the spectacle would be presented of a company with liabilities amounting to $32,121.27, with no one responsible for the payment of the balance of $17,358.77, which would be remaining after the application of the $12,762.50 and $2,000 of the assets to the payment of such liabilities. A resolution which embraces within its scope such a result can neither be maintained on principle nor authority. It is no answer to this to say that but two-

thirds of the stockholders availed themselves of the avenue of escape from liability provided in the resolution. Its validity is to be tested by the fact that under its terms all the stockholders might have escaped liability, taking with them all the assets of the company, amounting to $230,780, except $2,000, and putting in the treasury in lieu thereof $12,762.50 in money, with which to pay liabilities amounting to $32,121, for the payment of which all the stockholders would have been rateably bound previous to such withdrawal. If such withdrawal of all would have operated as fraud in law, if not in fact, on the creditors, so the withdrawal of a part would likewise *pro tanto* have the same effect.

The resolution in question never having been ratified nor sanctioned by the stockholders, is also assailable on the ground that the directors had no power to pass it, inasmuch as by its operation the capital stock was diminished from $255,250 to $88,000. The directors had only the general powers of managing the affairs of the company in the prosecution of its business, and its business was to make contracts of "insurance against loss or damage by fire, on land and water, on any description of property or merchandise." Such powers do not authorize the directors either to increase or diminish the capital stock, or to change the fundamental organization of the company. The case of *Railway Co. v. Allerton*, 18 Wall. 233, fully sustains the above proposition, where it is held that changes in the extent of constituency or membership of a corporation involving the amount of its capital stock, are necessarily fundamental in their character, and cannot on general principles be made without the express or implied consent of the members. A change as respects the constituency or capital and membership of a body corporate, being fundamental and next in importance to the purposes and objects of the corporation, without the consent of the stockholders, "would be to make them members of an association in which they never con-

28—72

sented to become such. It would change the relative influence, control and profit of each member. If the directors alone could do it, they could always perpetuate their power. Their agency does not extend to such an act unless so expressed in the charter."

The case of *Upton v. Tribilcock*, 91 U. S. 45, is equally emphatic in condemnation of the right of directors to limit the liability of stockholders as to unpaid stock, and pronounces such a transaction void. Justice Hunt, speaking for the court, uses the following language : " The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Its violation will not be undertaken by any just-minded man, and will not be permitted by the courts. The idea that the capital of a corporation is a football to be thrown into the market for purposes of speculation, that its value may be elevated or depressed to advance the interests of its managers, is a modern and wicked invention. Equally unsound is the opinion that the obligation of a subscriber to pay his subscription may be released or surrendered to him by the trustees of the company. This has often been attempted, but never successfully. The capital paid in and promised to be paid in is a fund which the trustees cannot squander or give away. They are bound to call in what is unpaid and carefully husband it when received." Section 201, Thompson on Stockholders, is an authority to the effect that the American courts have steadily annulled all arrangements between corporations and their stockholders whereby the latter were sought to be released from their liability to creditors. The same author, in the following section, refers to the case of *Dorr v. Stockdale*, 19 Iowa 269, to which 'counsel of defendants have cited us as sustaining the resolution of the 17th February, 1871, as the only American

case showing a departure from the rule laid down by him.

It is, however, urged by counsel that notwithstanding the retirement of defendants from the company under the resolution of the directors, with $150,000 of its assets, the unpaid stock notes of other stockholders who did not retire, were sufficient to pay all creditors, and that no wrong was done by virtue thereof to creditors, and that they could not, therefore, complain. In the case of the *Bedford R. R. Co. v. Bowser*, 48 Pa. St. 29, a similar question to the one here presented was considered. In that case 266 subscribers to the stock of a railroad company claimed to be released by virtue of an order of the board of directors authorizing the cancellation of their stock, and the court instructed the jury that if the company had sufficient assets to pay its debts, such order was valid, and the cancellation of the stock under it released the defendants. The court held that this instruction was erroneous, and remarked, in passing upon it, that the directors of the company then in office were its agents, with limited power, the extent of which the defendant was bound to know. Their duties were to conduct the affairs to the furtherance of the ends for which the company was created. They had no right to give any of its funds, or to deprive it of any of its means, to accomplish the full purpose for which it was chartered. The creditors were not the only persons who had interest at stake. The stockholders who had paid their subscriptions or bought their stock   *   *   were at least equally interested. So in the case of *Spackman v. Evans*, L. R., 3 H. L. Cas. 186, where a kindred question came before the court, Lord Cranworth remarked that a stockholder might well object to relieving other stockholders and say " I became a stockholder, relying on the names of those who were engaged with me in the partnership. I delegated the management to certain directors, with defined powers and duties. It was part of the stipulation of the deed of partnership that none of my fellow shareholders should quit the partnership

<div style="margin-left:2em; font-size:smaller">4. ——: withdrawal of stock.</div>

except by substituting in his place some other person approved by the directors. This was, I thought, sufficient security to me, that in the event of my being called on by a creditor, who, having recovered judgment against the company, should proceed to enforce payment against me, I had solvent partners, from whom I might obtain contribution, and now I find that, without authority, you, the directors, have taken on yourselves to enable several of my partners to withdraw from the partnership, a proceeding which I never authorized." It follows, we think, from the above authority, that the resolution of the board of directors of February 17th, 1871, whether it be considered with reference to its bearing on the creditors of the company or its stockolders, or on both, cannot afford the protection which the defendants claim under it.

The other questions presented by the counsel we have not considered, not deeming them material to a proper disposition of the case. Judgment affirmed, in which all concur.