Thompson v. Greeley.

THOMPSON, *Receiver*, v. GREELEY *et al.*

DIVISION TWO.

107  577
107  594
107  577
52a  448
107  577
148  393
107  577
168  ²335

1. **Insolvent Corporation:** ACTIONS BY RECEIVER: STATUTE.. Revised Statutes, 1889, sections 551 and 2193-4, confer no statutory authority on the receiver of an insolvent corporation to prosecute an action for damages founded on the misconduct of the directors.

2. —— : —— : EQUITY. A court of chancery which has appointed the receiver is, however, not prohibited by the foregoing sections of the statutes from ordering him to bring said action, and the power to make such order is within the court's general equitable jurisdiction.

3. **Receiver:** COLLATERAL ATTACK. A decree appointing a receiver is binding in a collateral proceeding.

4. **Savings Bank:** ILLEGAL LOANS: LIABILITY OF DIRECTORS. The directors of a savings bank who have loaned to one person a sum greater than one-fourth of the bank's capital stock, contrary to the provisions of section 916, Revised Statutes, 1879, are liable to the bank or its receiver for any loss that may accrue from such loan although the statute itself does not provide any penalty for its violation.

5. —— : —— : —— : ACTION AT LAW. The liability of the directors for such misconduct may be enforced by an action at law where no accounting is necessary to determine the extent of the loss.

*Appeal from Adair Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED AND REMANDED.

*Boyle, Adams & McKeighan* for appellant.

(1) Under the allegations of each of the petitions in each of said cases, the defendants were liable to respond to the plaintiff for the losses caused the bank by their plain and inexcusable violation of the charter

of the bank. *Stephens v. Overstolz*, 43 Fed. Rep. 465. (2) "If directors of a corporation can avoid, with proper care, a mistake or violation of the charter of the corporation, they will be held liable." *Hodges v. Screw Co.*, 1 R. I. 312. (3) "Where bank directors proceed prematurely to issue notes for circulation in violation of the provisions of the charter, and the bank becomes insolvent, the directors may be proceeded against as for a breach of trust. *Schley v. Dixon*, 24 Ga. (71 A. D. 121) 273 ; Morse on Banking [2 Ed.] 133 ; *Marshall v. Bank*, 28 Cent. Law Journal, No. 12, p. 283 (Sup. Ct. App. Va., Jan. 24, 1889). (4) The other ground of the demurrer, that the plaintiff in these suits has no legal capacity to sue, because the court that appointed him had no jurisdiction to appoint him, is not well taken. This court held in this very receivership in *Greeley v. Bank*, 103 Mo. 212, that an objection, that the circuit court had no power to appoint plaintiff a receiver of said bank was not well taken, for two among other reasons : *First.* Because it is a collateral attack on a valid judgment, to-wit, the appointment of a receiver, a judgment from which an appeal could have been taken and the matter righted, or the matter could have been reached and vacated by motion. *Second.* The circuit court had authority, independent of section 2193, Revised Statutes, 1889, to appoint a receiver. The following cases are to the same effect : *Block v. Estes*, 92 Mo. 324 ; *Cox v. Volkert*, 86 Mo. 505 ; High on Receivers, sec. 203 ; *Packet Co. v. Davidson*, 13 Mo. App. 561; *Rosenheim v. Hartsock*, 90 Mo. 365 ; *Dollarhide v. Parks*, 92 Mo. 188 ; *Hardin v. Lee*, 51 Mo. 244 ; *Yates v. Johnson*, 87 Mo. 217 ; *Richards v. People*, 81 Ill. 550 ; *Barbour v. Bank*, 52 O. S. 133 ; *Beverly v. Brooks*, 4 Gratt. 187 ; *Railroad v. Railroad*, 46 Vt. 795 ; Freeman on Judgments, secs. 23, 25 and 28; *Bank v. Reilly*, 8 Mo. App. 546 ; *Neal v. Hill*, 16 Cal. 145 ; R. S. 1889, sec. 2195 ; *St. Louis v. Gaslight Co.*, 11 Mo. App. 237 ; 87 Mo. 223.

*Hough, Overall & Judson* for respondents.

The demurrer was properly sustained, in that: (1) Plaintiff upon the facts stated had not the legal capacity to sue in his own name upon the causes of action stated in the petition, there being no power in the circuit court to assign to him, as a receiver of a banking corporation, under the laws of Missouri, the cause of action set out in the petition, belonging to the corporation, there being no statute or inherent jurisdiction in the circuit court authorizing such assignment. High on Receivers, secs. 231–288; Beach on Receivers, chap. 12, secs. 251–403; Kerr on Receivers, p. 192, note 1; Angell & Ames on Corp., sec. 777; 1 Morawetz on Corp., sec. 282; 2 Morawetz on Corp., sec. 1040; Waterman on Corp., secs. 356–370; Cook on Law of Stocks & Stockholders, sec. 700; 2 Kent Com. [12 Ed.] 311; *Folger v. Ins. Co.*, 99 Mass. 267; *Neall v. Hill*, 16 Cal. 145; 76 Am. Dec. 508; *Case of French Bank*, 53 Cal. 155; *People ex rel. v. Judges*, 35 Mich. 456; *Attorney General v. Ins. Co.*, 2 Johns. Chan. 371; *Bayless v. Orne*, 1 Freeman's Chan. 171; *Hannah v. Bank*, 67 Mo. 678; *State ex rel. v. Gambs*, 68 Mo. 289; *Brown v. Bank*, 5 Mo. App. 1; *Harlan v. Tel. Co.*, 32 Fed. Rep. 305; *Rec. Railroad*, 31 Fed. Rep. 862; *Dick v. Struthers*, 25 Fed. Rep. 104; *Yeagar v. Wallace*, 44 Penn. 294; *Chandler v. Brown*, 77 Ill. 337. (2) Even assuming that plaintiff can sue in his own name upon causes of action belonging to the corporation, no cause of action is stated in either petition. *Cable v. Gaty*, 34 Mo. 573; 2 Morawetz on Corp., sec. 906, *et seq.; Fusz v. Spaunhorst*, 67 Mo. 264; 1 Morawetz on Corp., sec. 566; *Spering's Appeal*, 71 Pa. St. 24; *Hodges v. Screw Co.*, 1 R. I. 312; *Shea v. Mabry*, 65 Tenn. 312; *Building Ass'n v. Corneil*, 33 N. J. Eq. 383; *Gurney Co. v. Gibb*, L. R. 5 H. L. 480; Thompson on Liability of Officers & Agents of Corp. 375; *Mfg. Co. v. Foster*,

41 N. W. Rep. (Iowa) p. 212; *Briggs v. Spalding*, 11 Sup. Ct. Rep. 924; *Clews v. Bardon*, 36 Fed. Rep. 617.

MACFARLANE, J.—This suit was commenced in the circuit court of the city of St. Louis, and on application of defendants was transferred to the circuit court of Adair county by change of venue.

The petition stated in substance the following facts: On the twenty-first day of January, 1864, the Provident Savings Bank was incorporated as a bank of deposit and discount, under the banking and incorporation laws of the state of Missouri, with a capital stock of $200,000, $191,000 of which had been paid in; that the bank commenced business under its charter, and continued the same until about July 14, 1886, when in a suit pending in the circuit court of the city of St. Louis, in which one Carlos S. Greeley was plaintiff and the said bank and its directors and officers were the defendants, the plaintiff, William H. Thompson, was, by the judgment and consideration of said court, duly made and given, appointed temporary receiver of the property, effects and demands of every kind and description of said bank.

That at the October term, 1886, of said court, to-wit, October 7, 1886, by the final decree and judgment of said court in said cause, duly given and made, the said plaintiff was continued as receiver as aforesaid, and the title to the property of said bank, real and personal, and all claims and demands whatsoever belonging to it, were by said decree and judgment vested in said plaintiff as receiver as aforesaid, with directions to proceed with all convenient speed to collect all sums of money due said bank, and to sell and convert into money all of the real estate, and other assets and property of said bank, for the benefit of the creditors of said bank, whose claims might be allowed by the said court in said proceedings, and for the benefit of said stockholders after payment of debts. Said

directors and officers of said bank were by said judg-ment and decree enjoined, and restrained, from exer-cising any control over the assets of said bank, and were directed to deliver the same to the receiver. That said degree and judgment also provided, that said plaintiff in his said capacity should have liberty to apply to the court for further instructions.

That said court in said case on, to-wit, the thirtieth day of November, 1887, on application made to it by said plaintiff for instructions with reference to the matters herein after set forth, enlarged said decree and judgment, so as specifically to invest this plaintiff with the cause of action thereinafter set forth, which as alleged had accrued to said bank before July 14, 1886, against said defendants, and directed this plaintiff to bring a suit or suits at law to enforce the demands thereinafter set forth.

That the said receiver entered upon the duties of his office and was duly qualified, and that there would not be enough money realized to pay the demands of the creditors allowed by said bank by at least $100,000.

That, before the incorporation of said bank, there had been incorporated under the laws of the state of Missouri another banking corporation under the name of the Provident Savings Institution, which was also a bank of deposit and discount, and which had been, and was, in business long before said twenty-fifth day of January, the day of the incorporation of the said Provident Savings Bank ; that the charter of the Provident Savings Institution was about to expire; whereupon said Provident Savings Bank was organized to purchase the property and effects of the said Provident Savings Institution ; that in pursuance of said purpose the said Provident Savings Bank did on the twenty-fourth day of January, 1884, purchase the assets and property of every kind and description of the said Provident Savings Institution, and did take possession of and ever after enjoyed the same.

That, at the date of said sale and purchase, the Anchor Milling Company was a corporation formed to manufacture and sell flour in the city of St. Louis, and was a customer of, and kept an account with, the said Provident Savings Institution in the sum of $79,429.24, in various notes, unsecured by any collateral security, or by any deed of trust or mortgage, which indebtedness was for money loaned and advanced by said Provident Savings Institution to said Anchor Milling Company; and, likewise, that said Anchor Milling Company was indebted at said date in the further sum of $10,569.74 by way of overdraft on its account for money loaned and advanced to it by said Provident Savings Institution, likewise insecured by any collateral security, or by any deed of trust or mortgage, which said notes and over-draft account were part of said purchase by said Provident Savings Bank and were transferred and delivered to it by said Provident Savings Institution; that ever afterwards said Anchor Milling Company recognized said Provident Savings Bank as its creditor with respect to said indebtedness, and paid interest to it on said notes down to July 14, 1886; the date when the plaintiff herein was appointed receiver of said Provident Savings Bank.

That said Provident Savings Bank, in said purchase of said notes and overdraft account, was in all things moved, controlled and directed by its then board of directors, namely, the said defendants and two other directors, James S. Garland and Almon B. Thompson, who were at the time of the bringing of this suit out of the jurisdiction of this court. One of the directors, F. W. Kefferstein, had departed this life, and his legal representatives were made defendants.

That when the said plaintiff, as receiver, took possession of the property and effects of the said Provident Savings Bank there remained on hand and unpaid of said notes so purchased three notes, namely: A note for $35,000, dated March 18, 1882, executed by

said Anchor Milling Company, payable on demand, to said Provident Savings Institution ; a note for $25,000, dated July 16, 1883, executed by said Anchor Milling Company to said Provident Savings Institution, payable on demand ; and also a note for $5,000, dated October 6, 1883, executed by said Anchor Milling Company, payable on demand to said Provident Savings Institution.

That the board of directors of said Provident Savings Bank, composed partly of the said respondents, on, to- wit, March 6, 1885, acting for and in behalf of said bank at the time when said Anchor Milling Company was indebted to the said Provident Savings Bank on said three notes aggregating $65,000, and on an over-draft on its bank account for $37,072.11, permitted said Anchor Milling Company to become indebted to it, the Provident Savings Bank, in the sum of $35,000, on a certain promissory note for that amount. The consideration of said note being money loaned by said bank to said milling company, on or about the date thereof, through the action of the board of directors composed as aforesaid. And said note, and money loaned as a consideration thereof, was so loaned and advanced without a collateral security, or deed of trust or mortgage upon real estate or personal property, assessed or assessable at a valuation in excess of ten per cent. of said loan and note above said limitation.

That, when the property and effects of said bank came into the hands of said plaintiff as receiver, said note was a part of the assets, wholly unpaid except as to interest thereon, and that said plaintiff had been unable and would be unable to collect anything on account of said note and indebtedness, the said Anchor Milling Company having become wholly insolvent with no property of any kind out of which said note or indebtedness could be made. So that said note and money loaned as a consideration thereof were wholly lost to said bank and said plaintiff as receiver.

That said defendants, directors as aforesaid, through and by their said action with respect to the said load and indebtedness, evidenced by said note, did wilfully and knowingly violate the laws of the state of Missouri constituting its charter, and said directors and said bank, through their action, did thereby directly and indirectly loan to said Anchor Milling Company, and suffer and permit it to become indebted to said bank in a sum to the extent of said note, to-wit, $35,000 in excess of twenty-five per cent. of the capital stock of the bank actually paid in, without the said Anchor Milling Company depositing with said bank collateral security, or executing or delivering to the said bank a deed of trust or mortgage upon real estate or personal property, assessed or assessable for taxable purposes, at a valuation of ten per cent. in excess of said loan and indebtedness, and thereby the said defendants did commit a plain breach of their duty with respect to said bank, as its directors, and the whole amount of said loan and debt of $35,000, by reason of the insolvency and failure of said Anchor Milling Company, and, by reason of the other facts set up in the petition, was wholly lost to said bank and said receiver. Judgment was prayed for the sum of $35,000, with interest and costs.

Defendants filed a demurrer to the petition, and assigned the following grounds of demurrer, namely:

*First.* That the plaintiff has not the legal capacity to sue, for the reason that said plaintiff has not been legally appointed receiver of the Provident Savings Bank, and the court that attempted to appoint said Thompson such receiver had not jurisdiction to make such appointment. *Second.* The petition does not state facts sufficient to constitute a cause of action.

The demurrer was sustained, and, plaintiff declining to plead further, judgment was rendered on the demurrer and plaintiff appealed to this court.

I.   As is seen, two objections are urged to this peti-
tion :   *First*, that plaintiff had not the legal capacity
to maintain the suit.   *Second*, no cause of action is
stated against defendants.

The right of plaintiff, as receiver to prosecute this
suit, depends either upon whether statutory authority
is given him, or if not, whether the inherent jurisdiction
of a court of chancery could confer it upon him.

There is no general statute of this state granting to
a court of equity jurisdiction, or any other officer
power, either to dissolve a corporation or wind up its
affairs, nor is there any special provisions made for set-
tling up the affairs of a banking corporation.   If any
general statutory power exists it must be found in the
Acts of 1881, page 175 ( R. S. 1889, sec. 2193 ), which is
the only general law providing for appointing a receiver
and sequestrating the property of an insolvent debtor.
That act provides that " the court, or any judge thereof
in vacation, shall have power to appoint a receiver,
whenever such appointment shall be deemed necessary,
whose duty it shall be to keep and preserve any money
or other things deposited in court, or that may be sub-
ject of a tender, and to keep and preserve all property
and protect any business or business interest intrusted
to him pending any legal or equitable proceeding con-
cerning the same subject to the order of the court."

Section 2194 extends the powers of receivers
appointed under the preceding section to those given
them under the attachment laws.   These powers are
found under section 551, which provides that, " when
notes, bills, books of account, accounts or other evi-
dences of debt are attached, they shall not be subject to
be retained upon the execution of a delivery bond, as
hereinbefore provided, but shall be delivered to the
receiver, who shall proceed with diligence to settle and
collect the same.   For that purpose he may commence
and maintain actions on the same, in his own name ;

but in such actions no right of defense shall be impaired."

These sections are all that are found of statutory authority or power delegated to receivers, nor is further authority given to courts to extend these powers to matters not specified therein, than is found in the sections themselves.

It seems clear that no authority is given the receiver under these statutes to prosecute an action for the recovery of the damages claimed in this suit. Demands growing out of the misconduct of the directors of a corporation do not fall within the category of notes, bills, books of account, accounts or other evidences of debt. *Hannah v. Bank*, 67 Mo. 678. We do not think the provisions of the statute can be enlarged or extended so as to authorize the receiver to act beyond the powers conferred upon him by the statute.

But is a court of chancery, having jurisdiction of the subject-matter, to be so limited and restricted by a statute designed to afford simply a legal remedy, and to give direction merely to an executive officer, as to confine its general jurisdiction within the letter of the law. This court, speaking through SHERWOOD, C. J., in regard to this same receivership, says (103 Mo. 222): "The circuit court, independent of section 2193, Revised Statutes, 1889, had the authority to appoint a receiver in vacation and to subsequently confirm that provisional appointment by an order made on the assembling of court. The section referred to does not shorten the arm of a court of equity in this particular since no words of preclusion are used in that section." Citing *Cox v. Volkert*, 86 Mo. 511.

It is urged with great earnestness that courts of equity, in the exercise of their general jurisdiction, without appropriate legislation, have no power to appoint a receiver to sequestrate the property and wind up the affairs of a corporation. High on Receivers is cited as an authority in support of this contention. In

treating the subject of receivers of corporations, that author says ( sec. 288 ) : "It is to be observed at the outset that the general jurisdiction of equity over corporate bodies does not extend to the power of dissolving the corporation, or of winding up its affairs and sequestrating the corporate property and effects, in the absence of express statutory authority. And courts of equity will not, *ordinarily*, by virtue of their general equitable jurisdiction, or of their visitorial powers over corporate bodies, sequestrate the effects of the corporation or take the management of its affairs from the hands of its own officers and intrust it to the control of a receiver of the court upon the application either of creditors or shareholders."

While Beach, in his work on receivers, lays down the rule broadly in section 403, that the jurisdiction of courts of equity to appoint receivers of corporations is wholly statutory, in section 404, the statement is qualified by certain exceptions arising from cases of extreme necessity.

These authors place the want of jurisdiction on the ground that a forfeiture of the corporate franchises can only be declared in a court of law in a proceeding in the name of the state, and the appointment of a receiver and a sequestration of the corporate property would suspend the functions of the corporation and virtually operate as an annihilation of corporate rights. These are persuasive reasons why courts should act with great caution, and not take the management of the concerns of corporations out of the hands of directors and managers, to whom the law has intrusted it, except in cases of urgent necessity. It is no reason against the jurisdiction of the courts when equity alone can grant adequate relief or protection to stockholders and creditors. These authorities, we think, recognize the jurisdiction but limit its exercise to cases ef extreme necessity. It may be here remarked, also, that the temporary control of an insolvent corporation by a court and a receiver

does not operate as a dissolution and forfeiture of its franchises. After the debts have been paid, and the necessary capital restored, this corporation could resume business under its original charter.

It is insisted that a statute enlarging the jurisdiction of courts of equity, to the extent of displacing the managers of corporations and substituting officers of the court to take charge of its affairs, should be strictly followed. We recognize the correctness of this proposition so far, at least, as it applies to the act of taking jurisdiction to appoint a receiver. After the appointment is made, the authority and power will depend much upon the terms of the statute. If it undertakes to prescribe every step to be taken, and directions and rules for the management of the property, these steps should be taken, and these rules and directions followed. *Hannah v. Bank, supra.* The proceedings then become statutory, rather than purely equitable.

If no details are prescribed by statute, or, if the prescribed directions are clearly inadequate to accomplish the evident purposes of the statute, then the recognized rules of proceedings in equity will have to be invoked. Thus in *Gill v. Balis,* 72 Mo. 429, it is said: "The settlement or winding up the affairs of a delinquent corporation can only be accomplished by the application of its assets to the payment of its debts, and the distribution to the stockholders of what may remain after the debts are paid. Ordinarily before the assets, when they consist in property and debts due the company, can be thus applied, it is necessary to convert the property into cash and to collect the debts, and, until this is done, its affairs cannot be settled, and the duty enjoined upon the court of winding up its affairs would remain unperformed. The duty of settling up the affairs of the company being thus devolved upon the court, no reason is perceived why it might not (without any statutory provision) resort to such methods as would enable it to perform the duty." In

that case, however, the court held that statutory authority to make "all orders and decrees needful" was sufficient to authorize the court to order the receiver to sue the stockholders for unpaid subscriptions for stock. It is clearly stated .that such right existed without reference to the statute.

As has been seen no special statute has been enacted for winding up the affairs of a banking corporation. nor general law applicable to such corporations. We think a mere glance at section 2193 suffices to convince any one that it was never designed to provide a method for settling the affairs of a corporation. It was clearly intended simply to give aid to a suit or proceeding at law then pending. So far as it may be applicable to corporations, it can be followed; but all details must be determined by the court as well as the necessity of orders and decrees in respect to the end to be attained.

The decree appointing the receiver is conclusive and binding in this proceeding, whether made under the general equity jurisdiction of the court, or under authority of the statute is immaterial. *Greeley v. Bank,* 103 Mo. 212; *Block v. Estes,* 92 Mo. 324; High on Receivers, sec. 202. As the statute makes no provision either limiting or enlarging the authority of the court in directing the manner in which the receiver should proceed in the performance of his duties, the court had general jurisdiction to make all orders and decrees necessary for subjecting all the property and assets of the corporation to the payment of its debts, and we think the order directing him to prosecute suits against the directors for any liability to the corporation valid.

II. We come now to a consideration of the second ground of objection to the petition, namely, that no cause of action is stated.

Under the provisions of the statute investing in a board of directors the management of the affairs of a banking corporation, the members of the board occupy

a fiduciary relation to the stockholders, creditors and depositors, which demand of them careful attention, good faith and honest management. As is said in *Louisville Nat. Bank v. Loving*, 82 Ky. 370: "By reason of the trustee character of the bank, the great facilities its officers have for committing frauds, the inability of the public to know its condition, and the supreme control the directors have over its affairs, it becomes the duty of the latter to so conduct the business that any misconduct cannot long continue. The banks transact the business of the country so largely, and those dealing with them are compelled to rely on their officers so implicitly, that the extraordinary privileges accorded to them should be properly exercised." For a failure to discharge these important trusts they become liable at the suit of the corporation for losses to the corporate assets thereby sustained. *Bent v. Priest*, 86 Mo. 482; *Slattery v. Trans. Co.*, 91 Mo. 217; *Ward v. Davidson*, 89 Mo. 445; *Hodges v. Screw Co.*, 1 R. I. 312; *Smith v. Hurd*, 12 Metc. 371; *Attorney General v. Ins. Co.*, 2 Johns. Ch. 371; Thompson on Liability of Officers, 376; *Cogswell v. Bull*, 39 Cal. 320; *Ins. Co. v. Jenkins*, 3 Wend. 13; *Hun v. Cary*, 82 N. Y. 70; *Mining Co. v. Ryan*, 42 Minn. 198.

A receiver of an insolvent corporation succeeds to the title of the property and rights of action of the corporation, when so invested by statute, or by the decree of the court appointing him, and is the proper party to a suit to enforce them by legal proceedings. If a right of action against these directors existed in favor of the corporation, this action is properly prosecuted in the name of the receiver. *Alexander v. Relfe*, 74 Mo. 516; *Gill v. Balis*, *supra;* High on Receivers, sec. 316; Thompson, Liability of Officers, etc., 377, and authorities cited by each; Morse on Banks & Banking, sec. 129; *Hun v. Cary*, *supra*.

It is insisted that, notwithstanding the directors of a corporation at common law may be liable for a fraudulent or negligent breach of duty, still no liability is

shown, for the reason that the acts prohibited are not such as would make them liable at common law, and no penalty is fixed for the violation of the statute, and the acts charged were not charged to have been done negligently, fraudulently or corruptly.

The cause of action stated is based upon an alleged disregard and violation of section 916, Revised Statutes, 1879, which is as follows: "No corporation organized under this article, or heretofore organized under a general or special law of this state, shall loan its money to any individual, corporation or company, directly or indirectly, or permit any individual, corporation or company to become at any time indebted to it in a sum exceeding twenty-five per cent. of its capital stock actually paid in, or permit a line of loans to any greater amount to any individual or corporation; nor shall any such corporation receive or hold the name of any director, or any officer of the same as principal or security or indorser upon paper to an amount greater than twenty-five per cent. of its capital stock, unless such borrower deposit with such corporation collateral security, or execute a deed of trust or mortgage upon real estate or personal property, which at the time is assessed or assessable for taxable purposes at a valuation ten per cent. in excess of such loan or indebtedness, and above the limitations in this section: provided, that the provisions in this section shall not be so construed as in anywise to interfere with the rules and regulations of any clearing-house association in this state in reference to the daily balances between banks."

The petition contains no charge of bad faith, or negligence on the part of defendants while acting as directors. It simply charges that defendants wilfully and knowingly violated this statute specifying the acts committed by which loss to the bank resulted.

It is true the statute imposes no penalty or liability on either the corporation or its directors for the violation of its provisions, and an action, therefore, must be

at common law for breach of duty. But every violation of law is a breach of duty. It has been seen that the directors are responsible to the corporation they undertake to manage for all losses occasioned by any flagrant breach of their duty. Whether that duty required good faith and honesty in the administration of the affairs and business of the corporation as is imposed at common law, or whether it was a duty enjoined or an act prohibited by statute could make no difference so far as the doing or omitting them might affect their liability. The liability rests upon the common-law rule, which "renders every agent liable who violates his authority to the damage of his principal." 1 Morawetz on Priv. Corp., sec. 556. The statute fixed the authority of the directors in respect to the amount in which any person, firm or corporation might become indebted to the bank, and if they wilfully and knowingly permitted the Anchor Milling Company to become indebted to it to a greater amount than was authorized by the statute, and loss to the bank resulted therefrom, they are, and in right should be, liable for such losses. The amount of care and attention directors are required to exercise depends upon the character of the business in which the company is engaged, and whether such care was given in a particular case would depend upon the proof. The business of savings banks affects the interest of the whole community, and, in order that no doubt might exist in regard to its duty in the important particular under consideration, this statute was evidently designed. The wilful violation of the statute, and consequent loss therefrom, furnish sufficient proof of liability. 1 Morawetz on Corp., sec. 555; *Citizens Building Ass'n v. Coriell*, 34 N. J. Eq. 383; *Oakland Bank v. Wilcox*, 60 Cal. 126.

The decision in the case of *Fusz v. Spaunhorst*, 67 Mo. 264, is not in conflict with this conclusion. The decision in that case was placed upon the ground that there was no statutory provision prohibiting the acts

complained of, and that the constitutional inhibition was not self-enforcing.

It is evident that this legislative prohibition was designed for the protection of the community at large, as well as the stockholders of the corporation, and such application and construction should be given it as will most effectually protect the public against loss occasioned by its wilful violation. 2 Morawetz on Corp., sec. 672.

Objection is made to the form of action; that it should have been by bill in equity, and not by action at law for damages. The form of action being against *quasi*-trustees depends upon the character of the liability and the purposes to be accomplished by the suit. If an accounting of the financial condition of the bank was necessary to determine the extent of the liability of the directors, a bill in equity would afford better facilities for doing so than an action at law. *Horn v. Henning*, 93 U. S. 228. No accounting seems necessary in this case. Defendants are liable, if liable at all, for damages for breach of duty, and no such complications seem to exist as demand the powers and instrumentalities of a court of chancery.

This action, we think, was properly one at law, for damages. *Hun v. Cary, supra; Mining Co. v. Ryan, supra.*

. The conclusion is that the demurrer to the petition should have been overruled; judgment reversed and cause remanded. All concur.