Shepard v. Drake.

J. A. SHEPARD, Appellant, v. A. M. DRAKE, Respondent.

Kansas City Court of Appeals, February 4, 1895.

1. **Appellate Practice:** CORPORATIONS: EXECUTION AGAINST STOCK-HOLDER. In reviewing the trial on a creditor's motion for execution against a stockholder, the appellate court will examine the entire evidence and determine as in equity whether or not the court below rightly decided both questions of fact and law.

2. **Corporations:** PAYMENT OF STOCK: LICENSE TO MINE. A contractual license revokable only by consent or by condition broken, is property though coupled with an obligation to continue the work, etc., and may be accepted by a corporation in payment of a subscription to its stock.

3. ———: ———: FICTITIOUS VALUES. The stock of a corporation may be paid for in money, labor or property of any kind used in the business at a fair valuation, but a fictitious valuation will make the shareholder liable to the creditor of the corporation *pro tanto* and this rule holds whether the over valuation be the result of fraud, mistake or bad judgment.

4. ———: ———: VALUATION OF MINING LICENSE: APPELLATE PRACTICE. Owing to the conflicting evidence of the value of the mining license given in payment of stock subscription to a corporation, the appellate court defers to the trial court as it seems he rightly decided the matter on the evidence.

5. ———: ———: STATUTE: ARTICLES. Under section 2768, Revised Statutes, 1889, whether it means that one half of the aggregate capital has been paid, or that fifty cents has been paid on each share of stock, *quære;* and does the recitation in articles of association that one half of the capital stock has been paid up mean that only one half the stock has been paid up or at least one-half has been paid up, *quære.*

6. ———: ———: ESTOPPEL. The very essence of all estoppels, especially where the matters are committed to writing, is that, as they are intended to preclude a demand for alleging the truth, they must be certain to every intent and are not to be sustained by agreement or inference; and a recital in corporate articles of association that one half the stock has been paid will not estop a subscriber from alleging and proving that his stock is fully paid.

*Appeal from the Jasper Circuit Court.*—Hon. H. H. Harding, Special Judge.

Affirmed.

*McReynolds & Halliburton* for appellants.

(1) As to proceedings against stockholders executions to issue when? R. S. 1889, sec. 2517. Upon a motion by the judgment creditor of a corporation to hold a stockholder liable under the Revised Statutes, section 736, when all the evidence is set out in the record, an appellate court deals with the facts as fully as if it were a case in equity. *Cognard v. Prendergast*, 35 Mo. App. 237. Such motion is a substitute for a bill in equity. *Erskin v. Loewenstein*, 82 Mo. 301. (2) The interest of the incorporators in the mining lots held by them under license under Daugherty & Davey not being transferable without the consent of licensor and not being vendible on execution and the licensees only having the right to dig ore and receive pay for same on a basis fixed by the licensors and having no interest in either the soil or the ore, is not such property as could be used in paying up the capital stock of the corpora-

tion and none of the stock as originally issued was paid for. A license is not vendible on execution. Freeman on Execution [Ed. 1879], sec. 119. (3) Property used to make up capital stock of a corporation must be tangible reality, something that can be reached by execution or other process for payment of debts. 2 Beach on Private Corporations, sec. 465; *Railroad v. Shackett*, 30 Mo. 553. (4) And the lots so held are mere licenses and have none of the elements of property or property rights. R. S. 1889, sec. 7034; *Lunsford v. Lead Co.*, 54 Mo. 426; *Boone v. Stover*, 66 Mo. 430; *Chynowitch v. Granby M. & S. Co.*, 74 Mo. 174; *Gurvey v. Gunther*, 51 Mo. App. 545. The articles of association of the Oasis Mining Company, showing that only one-half of the capital stock is paid up, the corporation and the stockholders when sued by creditors, are estopped from showing that statement not to be true and that it was in fact all paid up, having received credit on the faith of the statements in the articles of association they can not deny them. 2 Herman on Estoppel and Res Adjudicata, p. 1303; Bigelow on Estoppel, p. 463; Thompson Liability of Stockholders, sec. 2, pp. 124, 125; Beach on Private Corporations, sec. 154; *Adler v. Brick Co.*, 13 Wis. 63; *Kimball v. Davis*, 52 Mo. App. 194; R. S. 1889, sec. 2763; *Thompson v. Lake*, 19 Nev. 103, 7 Pac. Rep. 63; 7 Am. and Eng. Encyclopedia of Law, 29. Taking all the evidence in this case and admitting that licenses could be put in as capital stock, the court must come to the conclusion that the property was put in at a large overvaluation and that the stockholders should be made to pay the indebtedness. *Choteau Harrison & Valle v. Dean*, 7 Mo. App. 210; *Kehler v. Laderman*, 2 Mo. App. 550; *Shickle v. Watts*, 94 Mo. 410; *Jackson v. Traer*, 52 Am. Rep. 449; *Investment Co. v. Mining Co.*, 78 Wis. 427; *Land Co. v. Warehouse and*

*Elevator Co.*, 25 Am. State Rep. 65, 92 Ala. 45; *Garrett v. Mining Co.*, 113 Mo. 338.

*Thomas & Hackney, Galen* and *A. E. Spencer* for respondent.

(1) Unless prohibited by statute, an agreement between the incorporators of the company and the directors, by which the former conveyed to this company property needed for the purpose of its operation and received payment therefor in full paid shares of stock of the company, is, in the absence of fraud, binding upon the parties and such stock is full paid. *Graham v. Railroad*, 12 Otto, 148; Thompson on Liability of Stockholders, sec. 215; *Phelan v. Hagood*, 5 Dillon, 45; *Coit v. Amalgamating Co.*, 119 U. S. 343; *Bank v. Alden*, 129 U. S. 372; *Peck v. Co.*, 11 Ill. App. 188; *Grocer Company v. Crow*, 36 Mo. App. 288; *Garrett v. Coal Mining Co.*, 113 Mo. 330; *Shickle v. Watts*, 94 Mo. 414; *Foster v. Refining Co.*, 118 Mo. 238, 262; *Priest v. White*, 89 Mo. 609; *Car Seat Co. v. Rankin*, 45 Ill. App. 226. (2) The court committed no error in holding, as it did, that the mining lease of the incorporators of the Oasis Mining Company, on the four lots owned by respondent and his associates, was such valuable property as might be conveyed to the corporation as its capital stock. *Young v. Iron Company et al.*, 65 Mich. 111. The law applicable to cases of this character is well considered in *Boynton v. Hatch*, 47 N. Y. 228; *Schenck v. Andrews*, 57 N. Y. 130; *Boynton v. Andrews*, 63 N. Y. 93; *Douglass v. Ireland*, 73 N. Y, 100; *Car Seat Co. v. Rankin, supra.* (3) A corporation may take, in payment of its shares, any property which it may lawfully purchase. Thompson on stockholders, sec. 136; *Liebke v. Knapp*, 79 Mo. 22. The recital in the articles of incorporation, as to

how and to what amount shares of stock were paid, has no more force or effect than the recital of the consideration in a deed or contract. *Fontaine v. Savings Institute*, 57 Mo. 561; *Hollocher v. Hollocher*, 62 Mo. 267; *Liebke v. Knapp*, 79 Mo. 26. (4) The recital in the articles of incorporation that fifty per cent. of the capital stock had been paid is in nowise disputed or disproved or contradicted by the proof that, in fact, not only fifty per cent. had been paid, but that one hundred per cent. had been, in fact, paid. It is the essence of all estoppels, especially where the matter relied upon to estop is in writing, that they must be certain, to every intent, and should not be sustained by argument or inference. *Sutton v. Dameron*, 100 Mo. 141; 7 Am. and Eng Encyclopedia of Law, p. 8, and notes; Herman's Law of Estoppel [1 Ed.], sec. 244; *Wood v. Broadley*, 76 Mo. 23.

GILL J.—Plaintiff Shepard, is a judgment creditor of the Oasis Mining Company, a corporation formerly engaged in lead and zinc mining in Jasper county. Defendant Drake is the holder of stock in said corporation. After an unsuccessful effort by judgment and execution to secure satisfaction of his claim against the Mining Company, the plaintiff filed his motion, as provided for in section 2517, Revised Statutes 1889, asking the court to order an execution against the defendant for an alleged balance due on stock held by him. Drake denied any liability, claiming that he had fully paid his subscription, and that he owed no balance on that account.

The issues made on the motion were tried by the circuit court, resulting in a finding and judgment for defendant and plaintiff appealed.

I.   A decision of this case rests upon the question whether or not the defendant Drake had paid his stock

subscription to the Oasis Mining Company. In review-
ing causes of this nature it is made our duty to
examine the entire evidence, and determine as in equity,
whether or not the court below rightly decided both
questions of fact and law.

In the year 1890, defendant was the owner of a
one fourth interest in the right to mine lot 94, of
Daugherty & Davey's mining lands at Carterville, in
Jasper county. In May of that year the defendant,
together with his co-owners in lot 94, and the owners of
the adjacent lots 95, 98 and 99, and with the view of
more profitably operating said mining interests, organ-
ized the Oasis Mining Company with a stated capital
of $20,000. Each of said parties took stock propor-
tionate to the extent of his interest, the defendant
becoming subscriber to $1250 in stock, or 125 shares
at $10 per share. In payment of these stock subscrip-
tions, the lots were transferred to the corporation at the
agreed price of $5,000 per lot, defendant's stock
thereby becoming fully paid.

With this brief statement of the main facts, we
proceed to consider the points urged for reversing the
judgment of the circuit court, which as already stated,
was to the effect that defendant had paid his stock in
full and was not liable any further.

II. Counsel for plaintiff first contends that the
mining interest of defendant Drake in said lot "94,"
was not such property as could be used in paying up
the capital stock of the Oasis Mining Company; that it
was not of that substantial, tangible nature as would
serve that purpose; that it was a mere license from the
owners of the land with none of the elements of prop-
erty or property rights.

We can not indorse this view. Drake, under the
established rules and regulations of Daugherty &
Davey, the land owners, had entered upon this mining

lot, sunk a shaft 150 feet, and was exercising the right, given by such rules, of extracting and selling mineral. He had there a species of property, the right to continue to take mineral, coupled, it is true, with the obligation to continue the work and subjected to forfeiture if abandoned for a certain length of time. But still he had there a property, an incorporeal hereditament, which the land owner could not arbitrarily take from him. This right, it is true, was not technically a lease of land, but was a contractual license, revocable only by consent or by condition broken. *Chynowitch v. Smelting Co.*, 74 Mo. 173.

III. The next and perhaps more difficult question presented in this controversy, relates to the charge of over-valuation when Drake and the other stockholders paid their subscription by transferring their mining rights to the corporation.

It is now the well settled doctrine in this state, that while the stock of a corporation may be paid for in money, labor or property of any kind used in the business, yet such stock will not, as to the corporation's creditors, be deemed fully paid unless such money, labor or property shall, at the time, be the fair equivalent of the stock's par value. In other words, mere fictitious values placed on labor or property in payment for stock will be ignored, and the shareholder will get credit on his subscription for the real value of the labor or property, nothing more, and be compelled at the suit of a corporation creditor, to pay up the balance. And this rule seems to hold in this state whether the over valuation of the property received by the corporation, be the result of fraud, mistaken estimate or bad judgment. *Farmer's Bank v. Gallagher*, 43 Mo. App. 482–493, and cases cited; *Garrett v. Coal Mining Co.*, 113 Mo. 330.

Now, on this question of fact, whether or not there was an overestimate made when defendent turned over his interest in lot 94, in payment of his stock subscription, we have carefully read and considered the entire testimony, and while not wholly satisfied as to what was at the time a fair valuation of the property, we feel constrained to yield to the finding of the trial judge and abide his decision in that respect.   The mining right in lot 94, was taken in payment of stock at a valuation of $5,000.   There is testimony, coming, too, from several apparently credible witnesses, gentlemen of knowledge and large experience in mining lands in that vicinity, all tending to prove that $5,000 was a fair and conservative estimate for the property at the time.   On the other hand, other witnesses with an equal show of fairness, and gentlemen, too, of experience, have placed the fair value very much lower. Indeed, the range of values was from about $500 to $7,000.   Now the able and intelligent special judge who tried this case was in a much better situation to solve this conflict than we are; the witnesses were before him and were likely known by him, and we can not undertake to say that he gave undue weight to some and unjustly discriminated against others.   When the number of witnesses are considered, together with the reasons assigned for their respective judgment, it would seem that the trial judge rightly decided that there was not an overvaluation of the property.

IV.   In the articles of association for the organization of the Oasis Mining Company, it is stated that "the capital stock of this corporation is $20,000 divided into two thousand shares of the par value of $10 each.   The same has been *bona fide* subscribed and *one half thereof actually paid up*," etc.   This paper was signed by the defendant and other original stock-

holders and recorded as the statute provides. Secs. 2768, 2769, R. S. 1889.

The contention is that the defendant by force of the above recital is estopped to deny that there remained unpaid, at the organization of the corporation, the one half par value of the stock for which he subscribed. The basis of this contention is that by the statement; "and one half thereof actually paid," it was declared that the one half, and *only* the one half, of defendant's stock subscription had then been paid and that the other half was yet owing. The statute under which the foregoing articles of association were prepared is not very clear. By section 2768 it is provided that the articles of agreement, among other things, shall set out: * * * "third, the amount of the capital stock of the corporation, the number of shares into which it is divided, and the par value thereof, that the same has been *bona fide* subscribed, and one half thereof actually paid up." Is it meant by this last clause to state that the one half of the aggregate capital has been paid, or that fifty per cent. has been paid on each share of stock subscribed for? If the former is the meaning, then the statement will be verified by showing that half in number of the shares were paid in full and the other half were wholly unpaid. And again, is it meant by this statement that *only* one half of the capital stock has been paid up, or that *at least* one half thereof was paid?

This same ambiguity appearing in the statute is found in the articles of association now under consideration; and from it, therefore, it is a matter of doubt whether or not the incorporators of the Oasis Company (this defendant among them) meant to declare that Drake and others had each paid the one half of the amount by them respectively subscribed, or that one

half of the aggregate stock had been paid, or that at least the one-half thereof had been paid?

It is said now, to be "the very essence of· all estoppels, especially where the matters relied on to estop are committed to writing, that as they are intended to preclude a man from alleging the truth, they must be *certain to every intent*, and are not be sustained by argument or inference; there must be a precise affirmation to have this effect."   *   *   The reason for the rule being, "for no one shall be denied setting up the truth, unless it is in plain and clear contradiction to his former allegations and acts."   1 Greenleaf on Evidence, sec. 22.   *Sutton v. Dameron,* 100 Mo. 142, 151, and authorities cited.

Manifestly, then, under the foregoing rule the defendant was not estopped from proving the truth in relation to his stock subscription, and what had been paid thereon.   The language relied on is too dubious for that purpose.   It is clear from a consideration of the evidence in the case, that these articles were prepared from a mere copy of the statute in that regard, or that the certificate of another corporation was used without making the necessary changes.

The judgment seems to be for the right party and will be affirmed.   All concur.