J. P. FALL, Appellant, v. F. A. HORNBECK et al., Respondents.

Kansas City Court of Appeals, June 29, 1908.

1. **FRAUDULENT REPRESENTATIONS: Corporation: Value of Stock: Pleading: Action.** If credit is extended to a corporation on the faith of the statements of its officers as to its solvency and a creditor has no knowledge of their falsity, he may maintain an action against them for fraud; and a petition set out in the opinion is held to state a cause of action.

2. ———: **Assertions of Value: Opportunity of Knowledge.** Mere false assertions as to the value of property where no warranty is intended do not constitute actionable fraud, but this rule applies only where the parties have equal opportunity to form and exercise their judgment, which was not the case in the matter under judgment.

Appeal from Jackson Circuit Court.—*Hon. Henry K. McCune*, Judge.

REVERSED AND REMANDED.

*Wm. T. Jamison* for appellant.

(1)    Under the petition in the case at bar, actual fraud is alleged, so that the measure of damages would be the actual loss sustained by plaintiff.    Stone Cutter Co. v. Scott, 157 Mo. 525; VanCleave v. Berkey, 143 Mo. 136; Leonard v. Springer, 197 Ill. —; Hindman v. Bank, 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 108.

*W. R. Thurmond* for respondents.

(1)    Mere false assertions as to the value of property, where no warranty is intended, do not constitute actionable fraud, and means of knowledge is equivalent to knowledge.    Cornwall v. McFarland R. E. Co., 150 Mo. 383; Wilson v. Jackson, 167 Mo. 156; Dalrymple v. Craig, 149 Mo. 355; Wade v. Ringo, 122 Mo. 327; Anderson v. McPike, 86 Mo. 300.


BROADDUS, P. J.—The defendants suggest that the appeal be dismissed because the abstract fails to show an affidavit for appeal, and filing of a bill of exceptions.    As the court sustained a demurrer to plaintiff's second amended petition and dismissed the suit, a bill of exceptions was not necessary.    [1 McQuillin's Pleading and Practice, sec. 942; 3 Ency. Pleading and Practice, p. 407.]    The certified record shows that plaintiff filed affidavit for appeal and appeal was granted.

The suit is based upon certain alleged fraudulent acts of defendants and contains four counts, and as the allegations of fraud are the same in all the counts it is only necessary to call attention to one of them specially.    Said count reads as follows:

"Comes now the plaintiff, and for the first count of his second amended petition, states that on or about the first day of November, A. D. 1899; F. A. Hornbeck, J. U. Bruner, E. O. Haight, A. L. Howe, Neal S. Doran, and J. D. Eubank, did associate themselves to-

gether for the purpose of forming a corporation, to be known as the Juggernaut Zinc Mining Company, and that thereafter, on the second day of November, A. D. 1899, a certificate of incorporation was, by the said persons, caused to be issued by the State of Missouri to the said Juggernaut Zinc Mining Company, and that the said F. A. Hornbeck, J. U. Bruner, E. O. Haight, A. L. Howe and Neal S. Doran, were, by the said incorporators, agreed upon as the first board of directors. Plaintiff states that the said incorporators fixed the capital stock of said corporation at the sum of sixty thousand dollars ($60,000), divided into six hundred (600) shares, of the par value of one hundred dollars ($100) each, and that all of the said shares were subscribed for and issued to said incorporators.

"Plaintiff further states that thereafter, on or about the 13th day of November, A. D. 1899, at the instance and request of defendants, he did purchase from the said J. U. Bruner twenty-five (25) shares of said stock, for which, at their instance and request, he paid said company the sum of eight hundred thirty-three and 33-100 dollars ($833.33), and plaintiff further states that at the time of the purchase of the aforesaid twenty-five shares of said stock by him, and at all the times herein mentioned, prior thereto, defendants represented to him that the said capital stock had been fully paid up, by turning in property to constitute the same, which property was of the reasonable value of sixty thousand dollars ($60,000) in lawful money of the United States, and that said property was then in possession of said board of directors; that the entire capital of said company, consisting of mining leases, mining machinery and equipment, was of the reasonable value of more than sixty thousand dollars ($60,000), the exact amount not being stated; that the said company was wholly solvent, and that the said twenty-five (25) shares of stock, and all the stock of said company was, at the

time of such purchase, of the reasonable market value of thirty-three and one-third cents (33 1-3) on the dollar, and that the stock so purchased by this plaintiff was being sold by the said directors, for the purpose of prosecuting mining operations upon the said mining leases.

"Plaintiff further avers that all of the aforementioned representations were false when so made to him, which fact was well known to each of defendants, but that they fraudulently planned and connived together, prior to and at the time of the purchase of the said twenty-five shares by plaintiff, to cheat, wrong and defraud this plaintiff, and did, for that purpose, make the aforesaid false representations, knowing at the time they were false, and knowing, believing and intending that plaintiff would rely thereon and be induced thereby to purchase the said twenty-five shares of said stock.

"Plaintiff further states that he was wholly unfamiliar with and uninformed in respect to the value of mining leases, mining machinery and equipment of the character above referred to, and of the mining leases, mining machinery and equipment comprising the capital of said company, as above stated.  Plaintiff further avers that he did rely upon the aforesaid representations, made as aforesaid, and was not otherwise informed, and was thereby induced by defendants to purchase the said twenty-five shares of said stock, and that he would not have done so, save and except upon the strength of said representations.

"Plaintiff further states that the said twenty-five shares of stock were, at the time of purchase by him, and at all times thereafter, and now are wholly worthless and of no value whatever; that said capital stock was never, in whole or part, paid in manner stated or otherwise; that the said assets of said company were never of the value of sixty thousand dollars ($60,000), or of any sum whatsoever, but that such pretended cap-

ital, at all the times herein mentioned, was, and now is wholly valueless, and that at all of the times herein mentioned, the said company has been and now is wholly insolvent."

It is said in Van Cleve v. Berkey, 143 Mo. 109, that: "When a corporation is sent forth into the commercial world, accredited by the stockholders as possessed, in money or its equivalent in property, of a value equal to the par value of its capital stock, every person dealing with it unless otherwise advised, has a right to assume that such stock has been fully paid and to extend credit to it in the belief that the money or its equivalent in property will be forthcoming to meet his legitimate demands."      In a later case however the court said in reference to the matter as follows: "But statements made in the articles of association by them (stockholders) were addressed to the Secretary of State and not to a subsequent creditor of the corporation, and if he had no knowledge that such statements were false at the time he extended it credit and did not extend it credit in reliance upon their being true he cannot maintain an action against the incorporators for fraud and deceit."      [Webb v. Rockefeller, 195 Mo. 59.]

We cannot see that there is any conflict in these two opinions although plaintiff relies on the former to support his petition and defendants rely on the latter to sustain their demurrer.      It is fairly deducible from either, that if credit is extended to a corporation, on the faith of such statements and the creditor had no knowledge at the time of their falsity, he could maintain an action for fraud.      The allegations of the petition are that the fraudulent representations were made to the plaintiff by the defendant who knew at the time that they were false, and that it was such representation that induced him to buy the stock; and that he did not know at the time that they were false.

The defendants however insist that the statements

in question come within the rule that "Mere false assertions as to the value of property, where no warranty is intended, do not constitute actionable fraud; . . ." This rule applies where the parties have equal opportunity to form and exercise their own judgment. [Cornwall v. McFarland Real Estate Co., 150 Mo. 377; Wilson v. Jackson, 167 Mo. 135.]    But the rule has no application here, as the opportunities of the parties were not equal in respect to condition and value of the property of the corporation.    And as was said in Van Cleve v. Berkey, 143 Mo. 109, the plaintiff had a right to rely on the representations of the officers of the corporation as to the value of its property and its solvency. [See also Webb v. Rockefeller, 195 Mo. 59.]

The petition in our opinion stated a good cause of action.    Reversed and remanded.    All concur.